**SHEEHAN et al. v. HUNTER.**

No. 12149.

Circuit Court of Appeals, Eighth Circuit.

Feb. 9, 1943.

Carlton Fox, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., J. Louis Monarch and Clarence E. Dawson, Sp. Assts. to the Atty. Gen., Harry C. Blanton, U. S. Atty., of Sikeston, Mo., and Russell Vandivort, Asst. U. S. Atty., of St. Louis, Mo., on the brief), for appellants.

Roger Hibbard, of Hannibal, Mo., for appellee.

Before GARDNER, WOODROUGH, and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

The referee in bankruptcy, in a summary proceeding, entered a turnover order against the Collector of Internal Revenue for the First District of Missouri, for the return of some funds which he had collected out of the bank account of the bankrupt, for unpaid taxes, three days after the filing of a voluntary petition and an adjudication in bankruptcy,[1] and which he had covered into the Treasury of the United States by deposit in the Federal Reserve Bank of St. Louis.[2] On a petition for review, the district court approved and confirmed the referee's order, and the Collector took this appeal.[3]

We shall consider only the question whether a Collector of Internal Revenue can be thus subjected to a summary turnover order in bankruptcy, in an effort to compel the restoration of tax collections which he has paid into the Treasury of the United States. We think that he can not.

---

[1] The record shows that the Collector had perfected a lien upon the funds, under the revenue statutes, long prior to the bankruptcy, but he did not serve final notice and demand upon the bankrupt's depositary until after the institution of the proceedings and the adjudication. The trustee seeks to recover the funds on the ground that under section 67, sub. c of the Bankruptcy Act as amended, 11 U.S.C.A. § 107, sub. c, they are entitled to be applied to the payment of costs and expenses of administration and wage claims under section 64, sub. a(1) and (2) of the Bankruptcy Act as amended, 11 U.S.C.A. § 104, sub. a(1) and (2).

[2] See 53 Stat. 485, 26 U.S.C.A. Int. Rev.Code, §§ 3970, 3971.

[3] Before the appeal was heard in this court, the Collector died and the personal representatives of his estate were substituted as appellants. Appellee moved for an order requiring the substitution of the successor Collector, and this motion was renewed at the time the cause was submitted on its merits. We shall not reconsider the question here, particularly in view of our conclusion that the original Collector was not properly subject to the summary turnover order. As to the non-succession of liability of a Collector generally, see United States v. Kales, 314 U.S. 186, 198–200, 62 S.Ct. 214, 219–221, 86 L.Ed. 132; Smietanka v. Indiana Steel Co., 257 U.S. 1, 42 S.Ct. 1, 66 L. Ed. 99. Note also the provision of Judicial Code § 24(20), 28 U.S.C.A. § 41(20), for a direct action against the United States where the Collector "is dead or is not in office".

The referee and the district court apparently justified the order upon the ground that the Collector had not shown that he had attempted to obtain a return of the funds from the Treasury, and that he was unable to do so. The memorandum opinion of the referee states: "It has not been satisfactorily shown that it is beyond the power or ability of the Collector to make restitution." But whether the Collector was in a position thus to effect a restoration of the funds out of the Treasury was, in the situation here, a simple legal question and not one of doubtful fact.

Admittedly the Collector had parted with possession of the funds, by covering them into the Treasury prior to the trustee's application herein, and Congress clearly had left him without any further control over them.[4] There is no statute that authorizes a Collector to demand the summary return of tax collections out of the Treasury or that contemplates that he shall be able personally to syphon them back into the hands of a taxpayer or his successor in interest. Congress has prescribed an orderly scheme for obtaining repayment of tax collections that may improperly have come into the hands of the Treasury, through the filing of a formal claim by the taxpayer or his successor in interest and the institution, if necessary, of a plenary action for judgment.[5] A Collector has no authority to make the claim requisite for a direct refund, either formally or informally, in his official name, and the regulations of the Treasury Department specifically provide that any claim which is not made as prescribed "will not be considered for any purpose as a claim for refund."[6]

While the trustee presumably was hoping to short-cut the requirements of the statutes and the treasury regulations for obtaining tax refunds, by the threat of pressure upon the Collector which the turnover order implied, the order cannot be permitted to stand, since the Collector was not in a position to comply with it as a matter of law, and he could not possibly be held in contempt for his failure to do so.[7] The provision which Congress has made for indemnifying or protecting a Collector against the issuance of execution after a personal judgment has been recovered against him,[8] where the court certifies "that there was probable cause for the act done * * * or that he acted under the directions of the Secretary of the Treasury, or other proper officer of the Government", does not afford any basis for the turnover order here made as a foundation for contempt, since it does not give the Collector any control over funds in the Treasury but, upon the issuance of the certificate, simply converts the suit against the Collector, in effect, into one against the United States.[9] It does not provide any means of circumventing the requirements of the statutes and the treasury regulations for obtaining a return of tax collections.

We accordingly hold that a Collector of Internal Revenue, who has seized property or money belonging to a bankrupt es-

---

[4] As to the necessity of possession or control as the foundation for a turnover order generally, see Oriel v. Russell, 278 U.S. 358, 362, 363, 49 S.Ct. 173, 73 L.Ed. 419; In re Rosser, 8 Cir., 101 F. 562, 565, 566; In re Redbord, 2 Cir., 3 F.2d 793, 794; In re Gordon & Gelberg, 2 Cir., 69 F.2d 81, 83; In re Schoenberg, 2 Cir., 70 F.2d 321, 323; In re J. L. Marks & Co., 7 Cir., 85 F.2d 392, 393; 2 Collier on Bankruptcy, 14th Ed., 520.

[5] See 53 Stat. 465, 26 U.S.C.A. Int. Rev.Code, § 3772; 43 Stat. 972, 28 U.S. C.A. § 41(20); 36 Stat. 1136, 28 U.S.C. A. § 250(1).

[6] See 26 C.F.R. page 456, § 3.322-3.

[7] There is authority to the effect that a party who has possession of property belonging to a bankrupt at or after the institution of bankruptcy may properly be subjected to a turnover order and the question of his ability to comply be allowed to wait until the contempt proceedings. See Epstein v. Steinfeld, 3 Cir., 210 F. 236; In re Pennell, 3 Cir., 214 F. 337; Dittmar v. Michelson, 3 Cir., 281 F. 116; In re Jacobs, 9 Cir., 235 F. 706. Whatever may be the propriety of such a two-step determination of the question of control where the court is not sufficiently satisfied of the factual inability to make compliance at the time of the original hearing, there is no justification for resort to it against a public officer in a situation such as this, where the ability to comply is a legal question and not one of doubtful fact.

[8] R.S. § 989, 28 U.S.C.A. § 842. See, also, Rule 69(b), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

[9] George Moore Ice Cream Co., Inc., v. Rose, 289 U.S. 373, 53 S.Ct. 620, 77 L. Ed. 1265; Huntley v. Southern Oregon Sales, 9 Cir., 104 F.2d 153.

tate, in collection of unpaid taxes, and has covered the proceeds into the Treasury of the United States, is not subject to a turnover order in bankruptcy for the summary restoration of the funds. What may be the power of a bankruptcy court to punish as a direct contempt any attempted seizure of property in its possession is not here involved. We are concerned only with its right to issue a turnover order to compel a restoration of funds out of the Treasury.

The order is reversed and the cause is remanded with directions to dismiss the trustee's petition.