**In re John R. PFLUG, Jr., Debtor.**

**Bankruptcy No. 91–10713–AT.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Sept. 30, 1992.

Robert R. Staton, Paul R. Webber, IV, Thompson, Hine and Flory, Washington, D.C., Roy B. Zimmerman, Alexandria, Va., for debtor.

Gerald M. O'Donnell, Alexandria, Va., for trustee.

Gordon P. Peyton, Alexandria, Va., trustee.

Denise Erickson, Staff Counsel, Office of U.S. Trustee, Alexandria, Va.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

This case comes before the court on the debtor's motion to compel the chapter 7 trustee, Gordon P. Peyton, to file tax returns on behalf of the bankruptcy estate. Hearing was held on June 17, 1992, and the parties thereafter submitted briefs on the issues. For the reasons stated in this memorandum opinion the court denies the debtor's motion.[1]

### Facts

This bankruptcy case commenced on February 22, 1991. The debtor, a self-employed real estate investor, held varying percentages of interest in numerous real estate partnerships prior to his bankruptcy. Throughout 1991, the tax year in question, almost all of these ventures ceased operations and dissolved. To satisfy the outstanding mortgages the real estate assets of these entities were either sold or foreclosed upon. The debtor asserts that substantial "income"[2] is attributable to his bankruptcy estate from these transactions.

On June 14, 1991, the debtor filed with the Internal Revenue Service a statutory election to divide his 1991 taxable year into two "short-years", bifurcated at the commencement of the bankruptcy case.

Along with the debtor's initial request for the trustee to file a tax return, the debtor tendered various payments to the trustee. The debtor tendered two checks in the amount of $3,074.00, and $300.00 to the trustee representing distributions to the debtor from two of the partnerships. The debtor also tendered a $3,000.00 check to the trustee representing an offer by David H. Miller to purchase the debtor's interest in one of the partnerships.

The trustee returned the checks and denied the debtor's request to file 1991 tax returns. The trustee also asserts he has not yet accepted the $3,000 Miller offer. The aforementioned checks were sent back and forth between the parties and are currently in the possession of the trustee.

The debtor argues that the chapter 7 trustee is clearly required by Internal Revenue Code and recent case law to file 1991 income tax returns for the bankruptcy estate.

The trustee asserts the debtor lacks sufficient income required for the trustee to file 1991 tax returns. Additionally, the trustee disclaims any involvement in the alleged transactions, denies the existence of any benefit to the creditors of the estate from the alleged transactions and asserts that requiring him to file 1991 tax returns would be unduly burdensome and disruptive to the administration of the estate.

### Discussion and Conclusions of Law

Section 6012 of the Internal Revenue Code states in relevant part:

§ 6012. Persons required to make returns of income

(a) General Rule.—Returns with respect to income taxes under subtitle A shall be made by the following: ...

(9) Every estate of an individual under chapter 7 or 11 of title 11 of the United States Code (relating to bankruptcy) the gross income of which for the taxable year is not less than the sum of the exemption amount plus the basic stan-

---

1. At the outset it should be pointed out that this court very nearly denied the debtor's motion out of hand since it essentially requests the court to render an advisory opinion on prospective transactions. Moreover, I find it questionable whether it is within a bankruptcy court's province to determine whether any party involved in a bankruptcy case has a prospective duty under the Internal Revenue Code to file tax returns.

Nevertheless, I have ruled substantively on the motion since it raises an important question concerning a chapter 7 trustee's duty with re-

spect to income tax reporting of forgiveness of indebtedness income. As it turned out, the court concludes that under the circumstances as they presently exist, the trustee need not file an income tax return.

2. The alleged "income" has been derived from forgiveness of debts secured by real estate assets that were foreclosed upon for less than their outstanding mortgages. *See* 26 U.S.C.A. § 61(a)(3), (12) & (13) (West 1988).

dard deduction under section 63(c)(2)(D)[3]....

(b) Returns made by fiduciaries and receivers.—

(4) Returns of estates and trusts.—Returns of an estate, a trust, or an estate of an individual under chapter 7 or 11 of title 11 of the United States Code shall be made by the *fiduciary* thereof.

26 U.S.C.A. § 6012 (West 1988) (emphasis added).

Section 7701 of the Internal Revenue Code defines "fiduciary" as:

... [A] guardian, *trustee*, executor, administrator, receiver, conservator, or any person acting in any fiduciary capacity for any person.

26 U.S.C.A. § 7701(a)(6) (West 1988) (emphasis added).

The debtor argues that § 6012 imposes a duty upon chapter 7 bankruptcy trustees to file tax returns for estates with gross income exceeding $4,500.00. In addition to § 6012(b)(4) the debtor cites *Holywell Corp. v. Smith*, — U.S. —, 112 S.Ct. 1021, 117 L.Ed.2d 196 (1992), *In re Wills*, 46 B.R. 333 (Bankr.D.Md.1985), and *In re Goldblatt Brothers, Inc.*, 106 B.R. 522 (Bankr.N.D.Ill.1989) to support this proposition.

 The trustee argues that § 6012, *Holywell*, *In re Wills*, and *In re Goldblatt* impose an obligation to file tax returns only on trustees of liquidation trusts. That

is, only trustees who have actually engaged in the sale of estate property and have realized the threshold amount of gross income must file tax returns for the estate. The trustee asserts no income is attributable to the estate because *he* has not engaged in any transactions on behalf of the estate. While this is a factual distinction from the cited cases there is no such limitation in the clear and unambiguous text of § 6012(b)(4). In fact, Justice Thomas speaking for a unanimous Supreme Court in *Holywell* states: "Section 6012(b)(4), as the debtors assert, applies to the fiduciary of a trust *as well as the fiduciary of a bankruptcy estate*." *Holywell Corp. v. Smith*, — U.S. —, 112 S.Ct. 1021, 1026, 117 L.Ed.2d 196 (1992) (emphasis added).

The court is not persuaded that the distinction raised by the trustee is a distinction that makes a difference. The court agrees with the debtor that a chapter 7 bankruptcy trustee has a general obligation to file tax returns on behalf of a bankruptcy estate that realizes the threshold amount of gross income required to trigger the filing of a return. *See* U.S. Dep't of Justice Executive Office for U.S. Trustees, *Handbook for Chapter 7 Trustees* 33–34 (April 1992); 1 Lawrence P. King, Collier on Bankruptcy ¶ 8.02[3] (15th ed. 1992); *see also* John D. Howard, *An Overview of the State and Federal Tax Responsibilities of Bankruptcy Trustees and Debtors*, 93 Com.L.J. 43, 46–47 (1988).[4]

---

**3.** The threshold amount of gross income is $4,500.00. 26 U.S.C.A. § 63(c)(2)(D) (West 1988) (basic standard deduction is $2,500); 26 U.S.C.A. § 151(d)(1) (West 1988) (exemption amount is $2,000).

**4.** The trustee asserts that 26 U.S.C. § 1398, in this case, operates to place the 1991 tax responsibilities on the debtor and not the bankruptcy estate. The trustee's assertion in this regard is erroneous.

Section 1398 of the Bankruptcy Tax Act of 1980 was enacted to provide the first comprehensive treatment of individual debtors in chapter 7 cases. The Internal Revenue Service takes the position that the bankruptcy estate is a new, separate entity, which necessitates the filing of a return if the gross income of the estate exceeds the statutory minimum. *See In re Turboff*, 93 B.R. 523, 525 (Bankr.S.D.Tex.1988).

Under § 1398 the debtor may irrevocably elect to close his or her taxable year at the date

of bankruptcy. 26 U.S.C.A. § 1398(d)(2) (West 1988). If this election is made the debtor's taxable year is essentially divided into two "short" taxable years. The election pursuant to section 1398 may be made *only* on or before the 15th day of the fourth month following commencement of the bankruptcy case. 26 U.S.C.A. § 1398(d)(2)(D) (West 1988). If the debtor does not make the election, no part of the debtor's tax liability from the year in which the bankruptcy case commences is collectible from the estate, but is collectible directly from the individual debtor. *In re Turboff*, 93 B.R. 523, 525 (Bankr.S.D.Tex.1988); *see also In re Mirman*, 98 B.R. 742 (Bankr.E.D.Va.1989).

The trustee asserts the debtor has not made a timely 1398 election. The trustee is mistaken. The day of commencement in this case was February 22, 1991. The 15th day of the fourth month following February 22, 1991 is June 15, 1991. The debtor made his election on June 14, 1991.

The trustee must file a return for the estate if the estate realizes "gross income ... not less than the sum of the exemption amount plus the basic standard deduction under section 63(c)(2)(D)." 26 U.S.C.A. § 6012(a)(9) (West 1988). This threshold amount of gross income required to trigger the filing of a return is $4,500.00. 26 U.S.C.A. § 63(c)(2)(D) (West 1988) ($2,500 basic standard deduction); 26 U.S.C.A. § 151(d)(1) (West 1988) ($2,000.00 exemption amount).

■ The debtor asserts that the dissolution of the various partnerships in which he has an interest resulted in over $500,000.00 of reportable "gross income" to his bankruptcy estate.[5] The Internal Revenue Code defines "gross income" in relevant part as:

§ 61. Gross Income defined

(a) General definition.—Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items: ...

(3) Gains derived from dealings in property; ...

(12) Income from discharge of indebtedness;

(13) Distributive share of partnership gross income; ...

26 U.S.C.A. § 61(a)(3), (12), (13) (West 1988).

Although discharge of indebtedness is normally included in "gross income," section 108 excludes discharge of indebtedness from "gross income" in certain circumstances:

§ 108 Income from discharge of indebtedness

(a) Exclusion from gross income.—

(1) In general.—Gross income does not include any amount which (but for this subsection) would be includible in gross income by reason of the discharge (in whole or in part) of indebtedness of the taxpayer if— [6]

(A) the discharge occurs in a title 11 case,[7]

(B) the discharge occurs when the taxpayer is insolvent,[8] ...

26 U.S.C.A. § 108(a)(1)(A) & (B) (West 1988).

■ The tax treatment of the amount of discharged partnership debt which is allocated as an income item to a particular partner depends on whether that partner is in a bankruptcy case, is insolvent, or is solvent. If the particular partner is bankrupt or insolvent, the debt discharge amount is excluded from gross income pursuant to 26 U.S.C. § 108. *See* Lawrence P. King, Collier on Bankruptcy, *Text of Bankruptcy Tax Act of 1980 with House and Senate Reports* 17 (Special Supp.1981). Furthermore, discharge of indebtedness income is excluded from income under the special tax provisions of the bankruptcy code:

§ 346. Special tax provisions

...

(j)(1) Except as otherwise provided in this subsection, income is not realized by the estate, the debtor, or a successor to the debtor by reason of *forgiveness or*

---

5. The "income" generated by the dissolution of these ventures is approximately $578,277.00 and has been derived from the forgiveness of debts secured by real estate assets that were foreclosed upon for less than their outstanding mortgages.

6. For purposes of this section, the term "indebtedness of the taxpayer" means any indebtedness—(A) for which the taxpayer is liable, or (B) subject to which the taxpayer holds property. 26 U.S.C.A. § 108(d)(1)(A) & (B) (West 1988).

7. For purposes of this section, the term "title 11 case" means a case under title 11 of the United States Code (relating to bankruptcy), but only if the taxpayer is under the jurisdiction of the court in such case and the discharge of indebtedness is granted by the court or is pursuant to

a plan approved by the court. 26 U.S.C.A. § 108(d)(2) (West 1988).

8. For purposes of this section, the term "insolvent" means the excess of liabilities over the fair market value of assets. With respect to any discharge, whether or not the taxpayer is insolvent, and the amount by which the taxpayer is insolvent, shall be determined on the basis of the taxpayer's assets and liabilities immediately before the discharge. 26 U.S.C.A. § 108(d)(3) (West 1988). Whether this "insolvency exception" is applied at the partnership or partner level seems irrelevant to this case considering that these partnerships are defunct and this partner is bankrupt.

 

*discharge of indebtedness*[9] in a case under this title.

11 U.S.C. § 346(j)(1) (emphasis added).

The debtor does not dispute that if the debt relief is characterized as "discharge of indebtedness" income it would be excluded from gross income. The debtor, however, asserts the debt relief should be characterized as "sale or exchange" income falling outside 108's exclusion from gross income. The court is unwilling to accept the debtor's characterization.

The trustee's duty is to collect and reduce to money the property of the estate for which the trustee serves. 11 U.S.C. § 704. The trustee, as fiduciary for the debtor's partnership *interest* is not empowered to sell, exchange, or prevent foreclosure upon partnership assets. The trustee is the fiduciary of the debtor's partnership *interest* and is not accountable for the independent activities of the partnership itself. In a sense the value of the debtor's partnership interest is defined outside the trustee's control. This court is not concerned with the tax accounting debate of whether the *partnership* received "sale and exchange income" or "discharge of indebtedness" income. *See* William J. Rohrbach, Jr., *The Disposition of Properties Secured by Recourse and Nonrecourse Debt*, 41 Baylor L.Rev. 231, 250–60 (1989). The substantive character of the income that is allegedly attributable to this debtor's estate is clearly forgiveness of indebtedness income that is excluded from gross income under 26 U.S.C. § 108 and 11 U.S.C. § 346(j)(1).

▇ At this time, the only other alleged "gross income" consists of checks debtor tendered to the trustee totaling $6,374.00. The parties disagree on whether this amount is attributable to the estate. However, it is not disputed that $3,000.00 of the sum represents an offer to purchase the debtor's interest in one of the partnerships. There has been no evidence contradicting the trustee's assertion that this offer has not yet been accepted and is still under consideration.

This leaves $3,374.00 of income allegedly attributable to the debtor's estate. Even if this entire remaining amount is attributable to the estate, it still falls below the $4,500.00 required to trigger the filing of a return. 26 U.S.C.A. § 6012(a)(9) (West 1988). At this time the debtor has not shown sufficient gross income to require the trustee to file income tax returns for the debtor's estate.

Accordingly, debtor's motion to compel the chapter 7 trustee to file tax returns is denied.

A separate order will be entered.

---

9. The terms "forgiveness" and "discharge" are redundant, but are used to clarify that "discharge" in the context of a special tax provision in title 11 includes forgiveness of indebtedness whether or not such indebtedness is "discharged" in the bankruptcy sense. *See* 11 U.S.C. § 346(j) Notes of Committee on the Judiciary, Senate Report No. 95–989.