**In re James Lee KNOBEL and Leigh Jae Knobel, Debtors.**

**Bankruptcy No. 91–53542–C.**

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

April 5, 1994.

**437**

David T. Cain, San Antonio, TX, for debtors.

John Patrick Lowe, Uvalde, TX, Trustee.

A. Ellouise Niblo, Dallas, TX, for U.S.

**DECISION AND ORDER ON TRUSTEES' MOTION FOR DETERMINATION OF TAX LIABILITY**

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for consideration the chapter 7 trustee's Motion for Determination of Tax Liability for the Period January 1, 1992 through December 31, 1992. After consideration of the parties' memoranda and oral argument, and the relevant authorities, the court concludes that a joint filing under section 302 of the Bankruptcy Code produces two estates, each of which, absent an order of the court substantively consolidating the estates, are individual taxable entities (deemed married filed separately), entitled each to one personal exemption and one standard deduction. The following constitutes the court's findings of fact and conclusions of law. FED. R.BANKR.P. 7052.

### Jurisdictional Statement

This is a core proceeding under 28 U.S.C.A. § 157(b)(2)(B) (West 1993). This court has jurisdiction over this matter pursuant to 28 U.S.C.A. § 1334(b) and 11 U.S.C.A. § 505(a)(1) (West 1993).

1. Local Rule 1015(a) provides:
   [Federal Rule of Bankruptcy Procedure] 1015(b) notwithstanding, the estates of married debtors who file a joint petition shall be jointly administered and no separate Order will be entered. A Debtor, Trustee, or other party in interest may move to have the two

### Statement of Facts

The facts are not in dispute. James and Leigh Knobel (the "Knobels" or the "Debtors") filed a petition for relief under chapter 7 of the Bankruptcy Code, 11 U.S.C.A. §§ 101 *et seq.* (West 1993 & Supp.1994), on September 19, 1991. As a married couple, the Knobels chose to file "jointly" pursuant to section 302 of the Bankruptcy Code. So filing, they paid one filing fee; their case was assigned one case number; a single trustee was appointed; and the Internal Revenue Service ("IRS") assigned only one "employer identification number" ("EIN"). In accordance with Rule 1015(a) of Local Court Rules of the United States Bankruptcy Court for the Western District of Texas, the Knobels' case was, for procedural purposes only, jointly administered.[1]

The case was originally listed as a "no asset" case. Subsequently, on February 10, 1992, the trustee filed a notice of assets, assets about which the Debtors had been less than forthcoming. The Debtors failure to cooperate with the trustee in administering their estates ultimately led to denial of the Debtors' discharge. Notwithstanding the denials of discharge, the trustee continued to administer the *found* assets for the benefit of the Debtors' creditors.

Administration of the estates gave rise to taxable income in 1992. The trustee timely filed a Form 1041 (fiduciary tax return) for the tax year January 1, 1992 through December 31, 1992, under the EIN assigned to the case by the IRS. The Form 1041 indicated a total tax liability for the tax period of $312— $156 on behalf of the estate of Mr. Knobel and $156 on behalf of the estate of Mrs. Knobel. That tax liability was derived on the basis of two separate estates, each taking one standard deduction and one personal exemption, and was determined on the basis of a married person filing separately. This calculation was set forth on two Forms 1040 filed by the trustee with his fiduciary Form 1041;[2]

   estates separately administered, for cause shown.
   BANKR.W.D.TEX.CT.R. 1015(a).

2. The fiduciary Form 1041 is merely a conduit. As the IRS's 1992 filing instructions for the Form 1041 stated:

one filed on behalf of the estate of Mr. Knobel and one on behalf of the estate of Mrs. Knobel. Pursuant to section 505(b) of the Bankruptcy Code, the "hurry up" provision, the trustee requested from the IRS a "prompt" determination of any unpaid tax liability. By letter dated April 2, 1993, the trustee was advised by the IRS that the trustee's Form 1041 and attached Forms 1040 had been selected for examination.

Upon examination, the IRS challenged the trustee's determination of tax liability. After adjusting the tax returns to reflect one estate entitled to only *one* personal exemption, 26 U.S.C.A. § 151 (West 1988 & Supp.1994), and *one* standard deduction, 11 U.S.C.A. § 63(c) (West 1988 & Supp.1994), the IRS determined that the Debtors' *estate* underpaid its tax liability by $794.

The trustee brought the instant motion for resolution of this dispute. The trustee relies on the allegedly unambiguous language of section 302 of the Bankruptcy Code and sections 1398 and 6012(a)(9) of the Internal Revenue Code ("IRC"), 26 U.S.C.A. § 1398 (West 1988 & Supp.1994). Under section 302 of the Bankruptcy Code, the trustee contends, a joint filing by a married couple creates two estates that remain separate and distinct (taxable) entities until and unless a determination is made by the court that the separate estates should be *substantively* consolidated. Notes the trustee, mere joint administration pursuant to Local Rule 1015(a) does not consolidate the estates for *substantive* purposes, *i.e.*, it does not result in the disregard of legal boundaries of ownership and liability, it serves only as a tool to ease

the time and cost of administration of related cases. Because the Knobels' estates have never been substantively consolidated by order of this court, the trustee concludes that the estates remain two separate taxable entities under sections 6012(a)(9) and 1398(c) of the IRC and each is entitled to a personal exemption and a standard deduction (as a married person filing separately) in calculation of its taxable income.

Beyond what the trustee asserts is the plain language of the Bankruptcy Code and the IRC, the trustee looks to section 522(m) of the Bankruptcy Code by way of analogy for the proposition that a joint filing does not result, *ipso facto*, in the collapse of the individual integrity of each debtor (or by extension, one would suppose, their respective estates). Subsection (m) of section 522 of the Bankruptcy Code, which concerns entitlement to bankruptcy exemptions, provides "[s]ubject to the limitation subsection (b), this section shall apply separately with respect to each debtor in a joint case." 11 U.S.C.A. § 522(m). Thus, each debtor in a joint case is entitled to claim certain property as exempt. While the trustee's observation here is valid, because the focus of section 522(m) is the debtors, not their estates, the analogy is not apposite to the court's current inquiry.

The IRS looks away from section 302 to section 541(a)(2)[3] of the Bankruptcy Code and section 1398(g) of the IRC, which the IRS contends support its argument that only one estate and one taxable entity is created upon the filing of a joint petition under section 302 of the Bankruptcy Code. The IRS

---

The fiduciary must file Form 1041 for the estate of an individual involved in bankruptcy proceedings under chapter 7 or 11 of title 11 ... if the estate has gross income for the tax year of $5,300 or more. Form 1041 is used ONLY as a transmittal for **Form 1040**, U.S. Individual Income Tax Return. Figure the tax for the bankruptcy estate on Form 1040 by using the tax rate schedule for a married person filing separately.
Department of Treas. *1992 Instructions for Form 1041* at 2 (U.S. Gov't Printing Office: 1992 0—315–209).

**3.** Section 541(a)(2) provides:
(a) The commencement of a case under section 301, 302, or 303 of this title creates an

estate. Such estate is comprised of all the following property, wherever located and by whomever held:

\*   \*   \*   \*   \*   \*

(2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—
(A) under the sole, equal, or joint management and control of the debtor; or
(B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.
11 U.S.C.A. § 541(a)(2).

also asserts that payment of only one filing fee, the assignment of only one case number, the assignment of only one employer identification number and the appointment of only one trustee, support a finding of only one estate. Further, the IRS suggests that the very treatment of the alleged estates by the trustee and the court effects a *de facto* substantive consolidation. In short, the IRS opines that to accept the trustee's argument elevates form over substance, and invites abuse of both the IRC and the Bankruptcy Code.

### Discussion

█ Neither the parties' nor the court's own research has uncovered a published decision that addresses the issue whether a joint bankruptcy filing creates one taxable entity or two for purposes of determining entitlement to personal exemptions and deductions from income. This appears to be a veritable case of first impression.[4]

### One Estate or Two?

Section 302 of the Bankruptcy Code provides for the joint filing of a petition for relief under title 11.[5] As the statute states, debtors availing themselves of such relief need file only one petition, and need pay only one filing fee. Consequently, only one case number is assigned, only one trustee is appointed and only one tax identification number is assigned by the IRS. *See, e.g., In re Crowell,* 53 B.R. 555 (Bankr.M.D.Tenn.1985). Section 302 of the Bankruptcy Code effects a change from prior law under the Bankruptcy Act of 1898 insofar as the Bankruptcy Act made no express provision for the filing of joint petitions. Indeed, for a significant portion of this century married women were not qualified to file bankruptcy—not because they were not considered "persons" under the Bankruptcy Act,[6] but rather because, under common law, and under the laws of most states, women could not incur debt or own personal property. *See generally* 1 Collier on Bankruptcy § 4.11 (14th ed. 1974). For example, inability to incur debts excluded women from petitioning under Chapter XI of the Bankruptcy Act, as a debtor under that chapter had to have unsecured debts which the debtor was obligated to pay. *See generally* 8 Collier on Bankruptcy §§ 321–324, at ¶ 4.06[5] (14th ed. 1978). Moreover, in community property states, like Texas, where the husband, was charged under state law with management of the community estate, only the husband could bring the community property into bankruptcy, as the wife generally could not convey an interest in community property except to the husband or as an agent for him. *See generally* 4 Collier on Bankruptcy ¶ 70.17[11] at 193 & 195 (14th ed. 1978).

By 1979, when the Bankruptcy Code was enacted, those obstacles to a married wom-

---

**4.** While the court writes for the first time on this issue, the court does not write necessarily on a clean slate, as the significance of joint filings has been much discussed. *See Ageton v. Cervenka (In re Ageton),* 14 B.R. 833 (Bankr. 9th Cir.1981); *Chan v. Austin Bank of Chicago (In re Chan),* 113 B.R. 427 (N.D.Ill.1990); *In re McCulley,* 150 B.R. 358 (Bankr.M.D.Pa.1993); *In re Chandler,* 148 B.R. 13 (Bankr.E.D.N.C.1992); *In re Pflug,* 146 B.R. 687 (Bankr.E.D.Va.1992); *American State Bank v. Montgomery (In re Montgomery),* 86 B.R. 948, 960 (Bankr.N.D.Ind.1988); *In re Birch,* 72 B.R. 103 (Bankr.D.N.H.1987); *In re McAlister,* 56 B.R. 164 (Bankr.D.Or.1985); *In re Masterson,* 55 B.R. 648 (Bankr.W.D.Pa.1985); *In re Crowell,* 53 B.R. 555 (Bankr.M.D.Tenn.1985); *Feldman v. Maryland Nat'l Bank (In re Wills),* 46 B.R. 333 (Bankr.D.Md.1985); *In re Arnold,* 33 B.R. 765 (Bankr.E.D.N.Y.1983); *In re Stuart,* 31 B.R. 18 (Bankr.D.Conn.1983); *In re Barnes,* 14 B.R. 788 (Bankr.N.D.Tex.1981); *In re Howard,* 6 B.R. 220 (Bankr.S.D.Ohio 1980); *see also In re Mehr,* 153 B.R. 430 (Bankr.D.N.J.1993).

**5.** Section 302, entitled "Joint Cases" provides:

(a) A joint case under a chapter of this title is commenced by the filing with the bankruptcy court of a single petition under such chapter by an individual that may be a debtor under such chapter and such individual's spouse. The commencement of a joint case under a chapter of this title constitutes an order for relief under such chapter.

(b) After the commencement of a joint case, the court shall determine the extent, if any, to which the debtors' estates shall be consolidated.

11 U.S.C.A. § 302 (West 1993 & Supp.1994).

**6.** In fact, to erase any doubt, "women" were included in the definition of "persons" eligible to file for bankruptcy protection under the Bankruptcy Act. 11 U.S.C. § 1(23) (1938) [repealed] ("persons shall include corporations, except where otherwise specified, and officers, partnerships, and women, ...").

an's participation in the community and in the commercial world at large had been removed. Thus, capable of incurring debt, owning property (instead of *being* property) and conveying community property, married women, too, could avail themselves of the relief available under the bankruptcy laws. Provision for joint filings under the Bankruptcy Code acknowledges the changed times.[7]

While a married couple may file jointly under the Bankruptcy Code, the filing does not disregard that the filing consists of two individuals—it does not return us to days past. The Bankruptcy Code recognizes the property regimes established under the law of the debtors' domiciliary state, including community property regimes where such are in place. *See* 11 U.S.C.A. §§ 541(a) & 726(c); *In re Ageton,* 14 B.R. 833, 835–36 (Bankr. 9th Cir.1981); *see also Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (interests in property determined under state law); *In re Crowell,* 53 B.R. 555, 557 (Bankr.M.D.Tenn.1985) ("To determine the effect of a joint petition requires an examination of the property interests of each estate separately."). Thus, in a community property state, like Texas, property owned by one or both of the spouses may include the separate property of the wife, the separate property of the husband, "special" or sole management community property of the wife and of the husband which is liable for

the individual debts of the non-manager spouse, and jointly owned community property.[8]

That there are two estates each consisting of each spouses' respective separate property and sole management community property plus the community's interest in joint community property is supported by the very section that recognizes joint petitions.[9] Section 302(b) provides:

> After the commencement of a joint case, the court shall determine the extent, if any, to which the debtors' estates shall be consolidated.

11 U.S.C.A. § 302(b). This provision has been consistently interpreted to signify that a joint filing results in two estates, absent an order of substantive consolidation by the court. *See In re Chandler,* 148 B.R. 13 (Bankr.E.D.N.C.1992). "Absent a court Order to consolidate, joint administration has absolutely no impact on the legal rights and obligations of the Debtors[s], Creditors, or the Trustee." *In re McCulley,* 150 B.R. 358, 360 (Bankr.M.D.Pa.1993); *see also In re Scholz,* 57 B.R. 259 (Bankr.N.D.Ohio 1986); *In re Crowell,* 53 B.R. 555, 557 (Bankr. M.D.Tenn.1985); *Ohio v. Wilkinson,* 24 B.R. 474 (Bankr.S.D.Ohio 1982). Thus, while joint cases generally "will be administered jointly, unless there is an objection[,] [c]onsolidation, ..., is not typically granted unless a party seeks it and there is proper justification." 1

---

7. Recognition of joint filings also "is posited on the assumption that in most consumer cases, married debtors are jointly liable on their debts and jointly hold most of their property." *In re Stuart,* 31 B.R. 18, 19 (Bankr.D.Conn.1983) (citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 321 (1977); S.Rep. No. 989, 2d Sess. 32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5818, 6277–78).

8. Under Texas law most all property acquired or possessed by a spouse during a marriage is presumed community property. Tex.Fam.Code Ann. §§ 5.01 (marital property), 5.02 (presumption), 5.21 (separate property), 5.22 (community property; general rules) (West 1983). Similarly, all liabilities incurred during the marriage are presumed to be incurred by the community. Tex. Fam.Code Ann. §§ 4.031 (spousal liability) & 5.61 (rules of marital property liability). A spouse *is* not personally liable for community debt, absent a showing of agency, joint venture, or implied or

express assumption of liability. *See* Tex.Fam.Code Ann. §§ 4.031 & 5.61; *Cockerham v. Cockerham,* 527 S.W.2d 162 (Tex.1975).

9. When a married couple files a joint petition in Texas, under section 541(a)(2) of the Bankruptcy Code into each spouse's estate goes the separate property of the respective spouse and "all interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is under the sole, equal, or joint management and control of the debtor; or liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable." 11 U.S.C. § 541(a)(2). Thus, into each estate falls the debtor's and her spouse's interest in community property—a result that makes segregation of property less than practical, and which may in the average case warrant substantive consolidation.

Norton Bankr. L. & Prac.2d § 19.11 & n. 85, at 19–23 (Clark Boardman Callaghan 1993) (*citing In re Coles,* 14 B.R. 5 (Bankr. E.D.Pa.1981)). Hence, the legislative admonition that " "[t]his section ... is not a license to consolidate in order to avoid other provisions of the title to the detriment of either the debtors or their creditors. It is designed primarily for ease of administration." " *In re Birch,* 72 B.R. 103, 106 (Bankr.D.N.H.1987) (*quoting* 2 Collier on Bankruptcy § 302.05 (15th ed. 1987) (*quoting* H.R.Rep. No. 595, 95th Cong., 1st Sess. 321 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 32 (1978) 1978 U.S.C.C.A.N. 5787, 5818, 6277–78)).[10] *See also In re Stuart,* 31 B.R. 18 (Bankr.D.Conn.1983).

■ That a joint filing occurs in a community property regime, like Texas, does not make superfluous or nugatory the effect of a joint filing under section 302(a), or the directive of subsection (b). That is to say, a court is not relieved from determining and an interested party is not relieved from requesting a determination under section 302(b) that the estates of a married couple who have filed jointly should be consolidated, or merged, to create a single pot from which all creditors will share. *In re Ageton,* 14 B.R. at 835–36. However, that marital property laws of the domiciliary state of jointly filed debtors prescribe a community property regime may provide significant justification for substantive consolidation, in whole or in part.[11] *See In re Barnes,* 14 B.R. 788, 791 (Bankr.N.D.Tex.1981).

Section 541(a)(2) of the Bankruptcy Code, relied on by the IRS, is a codification of pre-Code law with respect to treatment of community property in the context of a bankruptcy filing by one spouse. *See, e.g., Hannah v. Swift,* 61 F.2d 307, 310 (9th Cir.1932); *In re Jeffery,* 2 B.R. 197 (Bankr.S.D.Tex. 1980). It does not, as the IRS suggests, negate the existence of two estates. Commented the Ninth Circuit Bankruptcy Appellate Panel in *In re Ageton,* "[a] fair read of [sections 302, 541(a)(2) and 726(c) ] *does not* support the presumption that all of the property will be administered in one estate. What it does support is that community property from both estates will be segregated pending allowance of claims." *In re Ageton,* 14 B.R. at 836 (emphasis added).[12]

Further, the IRS's position fails in light of the statute itself, as well as when considered against the back drop of its implications. First, the very language of section 541(a)(2) anticipates a debtor and a non-debtor spouse. Even recognizing that the singular includes the plural, 11 U.S.C.A. § 102, absent legalization of polygamy, such construction is absurd in this context. Second, *de facto* substantive consolidation upon the mere filing of a joint case under section 302 of the Bankruptcy

---

10. Few courts actually have addressed the issue of substantive consolidation in the context of section 302(b). Those courts that have, however, impose an exacting burden on the party seeking consolidation. *See Chan v. Austin Bank of Chicago (In re Chan),* 113 B.R. 427 (N.D.Ill.1990) (consolidation warranted where the couple's affairs are so intermingled that their assets and liabilities may not be separated); *In re Birch,* 72 B.R. 103 (Bankr.D.N.H.1987) ("consolidation deemed appropriate where 'their affairs are so intermingled that their respective assets and liabilities cannot be separated' "); *In re Scholz,* 57 B.R. 259 (Bankr.N.D.Ohio 1986).

11. Substantive consolidation is not an all or nothing-at-all proposition. Rather, a "hybrid" form of consolidation has evolved that allows for less than complete consolidation where dictated by the facts of the particular case. *See generally* 1 Norton Bankr.L. & Prac.2d § 20.11 (Clark Boardman Callaghan 1993). Hybrid consolidation may be particularly useful where community

property is at issue, as a joint filing otherwise creates the anomalous situation of both estates comprised of all of the community's interest in jointly managed community property. In a chapter 7 case, such a fictional division further frustrates compliance with section 726(c) of the Bankruptcy Code, which directs the trustee to marshal each estate's community assets for payment of community creditors, before the debtor's separate property is tapped. 11 U.S.C.A. § 726(c).

12. The *Ageton* court recognized, as does this court, that "[c]onsolidation of cases involving joint debtors in community property states may be a practical necessity in light of §§ 541(a)(2) and 726(c)." *In re Ageton,* 14 B.R. at 835. Practical considerations notwithstanding, the *Ageton* court concluded that the statute means what it says—until and unless consolidation is ordered, there remain two estates subject to administration in a joint case.

Code [13] would raise serious constitutional questions. While state created rights are affected regularly in the course of the bankruptcy process, *de facto* consolidation would reshuffle parties' rights to seek payment from one asset pool or another—from the community only, or from one spouse plus the community—without notice or a hearing. For example, an unsecured creditor who agreed to look solely to the separate assets of one spouse who happened to be individually solvent would be highly disappointed to learn that upon a joint filing she would be required to share the riches of her debtor's separate estate with those who could look only to an insolvent community. *See D'Avignon v. Palmisano,* 34 B.R. 796, 799 (D.Vt.1986). Precisely because of its potential to adversely and dramatically effect a creditor's rights, sound practice necessitates that those potentially affected have notice and an opportunity to be heard. *See, e.g., Drabkin v. Midland–Ross Corp. (In re Auto–Train Corp.),* 810 F.2d 270, 277 (D.C.Cir.1987). As the *Auto–Train* court noted, "[b]efore ordering consolidation, a court must conduct a searching inquiry to ensure that consolidation yields benefits offsetting the harm it inflicts on objecting parties." *Id.* at 276 (*citing In re Snider Bros., Inc.,* 18 B.R. 230, 237–38 (Bankr.D.Mass.1982)). This is so "because every [debtor] is likely to have a different debt-to-asset ratio, [and] consolidation almost invariably redistributes wealth among the creditors of the various [debtors]." *Id.*[14]

■ Thus, the court concludes that while community property laws may lead a court to conclude that the separate estates created by a joint filing should be substantively consolidated, they do not support further a conclusion that the debtors' estates are *de facto* consolidated. Consolidation has been sought by no party to this matter or by the Debtors in this case. Absent such a determination by this court, there remain two bankruptcy estates, each of which is entitled to all of the benefits and burdens of that status.

### *One Taxable Entity or Two?*

■ While the court concludes that a joint filing under section 302 of the Bankruptcy Code creates two bankruptcy estates, that determination does not necessarily dictate the treatment of the estates under the IRC. In this case, however, the two statutory compilations peacefully co-exist. Separate, individual bankruptcy estates under the Bankruptcy Code constitute two taxable entities under the IRC, entitled to the benefits and burdens of that status.

The United States has long taken the position that a bankruptcy estate is a taxable entity separate and apart from the bankrupt individual. *Williams v. United States,* 667 F.2d 1108, 1110 (4th Cir.1981); *see also In re Turboff,* 93 B.R. 523, 525 (Bankr.S.D.Tex. 1988); *In re Goff,* 57 B.R. 442, 443–44 (Bankr.W.D.Tex.1985); GEN.COUNS.MEM. 24,-617, 1945–1 C.B. 235); Rev.Rul. 72–387, 1972–2 C.B. 632.[15] Although the decisions were not uniform, most courts agreed with the IRS and found bankruptcy estates subject to taxation. *See, e.g., In re O'Neill,* 667 F.2d at 1110 (citing cases); *In re Goff,* 57 B.R. at 443–44. It was not until enactment of the Bankruptcy Tax Act of 1980, Pub.L. No. 96–589, 94 Stat. 3389 (1980), however, that the government's position was backed by a comprehensive statutory scheme that governed taxation of individual bankruptcy estates. *See* 26 U.S.C.A. § 6012(a)(9) (West 1989 & Supp.1994); 26 U.S.C.A. § 1398

---

**13.** The rule proposed by the IRS would apply in every joint case, in every state whether under a community property regime or not.

**14.** The issue in *Auto–Train* was not the propriety of consolidation, rather it was whether a presumably correct order of consolidation could be issued *nunc pro tunc.* Where a *nunc pro tunc* order is sought, the *Auto–Train* court concluded that courts must engage in an "additional and slightly different balancing process before using it equitable *nunc pro tunc* powers to give a consolidation order retroactive effect." *Id.*

**15.** Prior to 1980, bankruptcy estates of individuals were deemed separate taxable entities under subchapter J of the IRC, which by its terms imposed taxes on the income of estates and any kind of property held in trust. *See United States v. States Farm Fire & Casualty Co. (In re Joplin),* 882 F.2d 1507, 1510 (10th Cir.1989) (*citing Williams v. United States,* 667 F.2d at 1110). More fundamentally, taxation of bankruptcy estates was considered appropriate because "all income from whatever source derived" is taxable under the IRC. 26 U.S.C.A. § 61. *Id.*

(West 1988 & Supp.1994); *see also In re Pflug,* 146 B.R. 687, 689 (Bankr.E.D.Va.1992) ("Section 1398 of the Bankruptcy Tax Act of 1980 was enacted to provide the *first* comprehensive treatment of individual debtors in chapter 7 cases."); *Feldman v. Maryland Nat'l Bank (In re Wills),* 46 B.R. 333 (Bankr. D.Md.1985); H.R.Rep. No. 833, 96th Cong., 2d Sess. 19 (1980);[16] S.Rep. No. 1035, 96th Cong., 2d Sess. (1980) U.S.Code Cong. & Admin.News 1980, 7017. The rationale for treating the individual debtor and the bankruptcy estate as separate entities for tax purposes was explained in the legislative history of the Bankruptcy Tax Act of 1980:

[T]he individual may obtain new assets or earn wages after transfer of the pre-bankruptcy property to the trustee and thus derive income independent of that derived by the trustee from the transferred assets of the bankruptcy estate as in chapter 7 and exempt property may be used to make payments to creditors, and hence the bankruptcy law does not create the same dichotomy between after-acquired assets of the individual debtor and assets of the

bankruptcy estate as in chapter 7 or chapter 11 cases.

H.R.Rep. No. 833, 96th Cong., 2d Sess. 19 n. 2 (1980).

Section 6012 of the IRC, which dictates who is responsible for filing federal tax returns, was amended in 1980 to provide that in individual chapter 7 and chapter 11 cases[17] the fiduciary of the estate is responsible for filing a return on behalf of the estate. Section 6012(a)(9) of the IRC provides:

**6012. Persons required to make returns of income**

(a) **General Rule.**—Returns with respect to income taxes under subtitle shall be made by the following:

(9) *Every estate of an individual under chapter 7 or 11 of title 11 of the United States Code (relating to bankruptcy) the gross income of which for the taxable year is not less than the sum of the exemption amount plus the basic standard deduction under section 63(c)(2)(D).*

26 U.S.C.A. § 6012(a)(9) (emphasis added).[18] Section 6012(b)(3) and (b)(4) of the IRC rest

**16.** The report of the House of Representatives noted:

> At present, there are no rules in the Internal Revenue Code specifying a taxable entity apart from the individual debtor; and, if so, how tax attributes are to be allocated between the estate and the debtor. This has resulted in uncertainty and litigation concerning Federal income tax liability of the bankruptcy estate and the debtor.
>
> H.R.Rep. No. 833, 96th Cong., 2d Sess. 19 (1980).

**17.** In corporate and partnership cases under chapter 7 or chapter 11 and individual chapter 13 cases a separate taxable estate, apart from the debtor, is not deemed to arise. *See* 26 U.S.C.A. §§ 1398(a) & 1399 (West 1988 & Supp.1994).

**18.** Section 63(c)(2)(D) of the IRC provides:

> (c) **Standard deduction.**—For purposes of this subtitle—
>   (1) **In general.**—Except as otherwise provided in this subtitle, the term "standard deduction" means the sum of—
>     (A) the basic standard deduction, and
>     (B) the additional standard deduction.
>   (2) **Basic standard deduction.**—For the purposes of paragraph (1), the basic standard deduction is—
>     \* \* \* \* \* \*
>   (D) $2,500 in the case of a married individual filing a separate return.

26 U.S.C.A. § 63(c)(2)(D) (West 1988 & Supp. 1994). Section 151 of the IRC, which sets forth allowances of deductions for personal exemptions, provides in part:

> (a) **Allowance of deductions.**—In the case of an individual, the exemptions provided by this section shall be allowed as deductions in computing taxable income.
> (b) **Taxpayer and spouse.**—An exemption of the exemption amount for the taxpayer; and an additional exemption of the exemption amount for the spouse of the taxpayer if a joint return is not made by the taxpayer and his spouse, and if the spouse, for the calendar year in which the taxable year of the taxpayer begins, has no gross income and is not a dependent of another taxpayer.
>
> \* \* \* \* \* \*
>
> (d) **Exemption amount.**—For purposes of this section—
>   (1) **In general.**—Except as otherwise provided in this subsection, the term "exemption amount" means $2,000.

26 U.S.C.A. § 151 (West 1988 & Supp.1993).

the burden to file tax returns on the fiduciary in an individual chapter 7 or chapter 11 case, be it the trustee or the debtor in possession. 26 U.S.C.A. § 6012(b) (West 1989 & Supp. 1994); *see also In re Pflug*, 146 B.R. at 689 ("[A] chapter 7 bankruptcy trustee has a general obligation to file tax returns on behalf of a bankruptcy estate that realizes the threshold amount of gross income required to trigger the filing of a return."); *Feldman v. Maryland Nat'l Bank (In re Wills)*, 46 B.R. 333 (Bankr.D.Md.1985) (court notes that even though attributes, exemptions and deductions may negate any tax liability, the trustee remains obligated to file a return if the estate's income exceeds the threshold amount and allow the IRS the opportunity to assess the estate's tax obligation).

Section 1398 of the IRC, also added in 1980, sets forth "[r]ules relating to individuals' title 11 cases," and applies to any case under chapter 7 or chapter 11 in which the debtor is an individual. 26 U.S.C.A. § 1398(a). Subsection (c) of section 1398 provides particularly for the computation and payment of taxes in individual title 11 cases:

(c) **Computation and payment of tax; basic standard deduction.**

(1) **Computation and payment of tax.**—Except as otherwise provided in this section, the taxable income of an estate shall be computed in the same manner as for an individual. The tax shall be computed on such taxable income and shall be paid by the trustee.

(2) **Tax rates.**—The tax on the taxable income of the estate shall be determined under subsection (d) of section (1).

(3) **Basic standard deduction.**—In the case of an estate which does not itemize deductions, the basic standard deduction for the estate for the taxable year shall

be the same as for a married individual filing a separate return for such year. 26 U.S.C.A. § 1398(c) (West 1988 & Supp. 1994).

It is clear from sections 6012(a)(9) and 1398 of the IRC, together with the historical taxation of bankruptcy estates, the legislative history and the case law, that the focus of the taxing authority is the "estate." While "estate" is not defined under the IRC in this context, the court concludes that the "estate" referred to in sections 6012(a)(9) and 1398 is the bankruptcy estate as defined under section 541 of the Bankruptcy Code. *See Samore v. Olson (In re Olson)*, 930 F.2d 6, 8 (8th Cir.1991); *In re Joplin*, 882 F.2d at 1509–11; *In re Turboff*, 93 B.R. at 525. The clear import from sections 1398(c) and 6012(a)(9) of the IRC is that the estate is entitled to one personal exemption and one standard deduction, based on the status of a married person filing separately in calculating its taxable income. Indeed, an estate is not required to file a tax return or be liable for income taxes unless its gross income exceeds a threshold amount which equals the exemption amount plus the standard deduction amount. *See In re Pflug*, 146 B.R. at 689; *see also* note 2 *supra* (the IRS's own instructions for filing returns on behalf of individual chapter 7 and chapter 11 cases state that a return only need be filed if the estate's income for the taxable year is $5,300 or more). Notwithstanding, the IRS contends that subsection (g) of section 1398 deprives the estate of deductions under section 63 of the IRC and exemptions under section 151 of the IRC that otherwise would be available to a married person filing separately. Section 1398(g) of the IRC provides a list of tax attributes to which the estate succeeds. Even accepting the IRS's position that section 1398(g) provides an exclusive list,[19] each estate's entitlement to a personal

---

19. The IRS relies on *In re Luster*, 981 F.2d 277 (7th Cir.1992), and *In re Mehr*, 153 B.R. 430 (Bankr.D.N.J.1993) for this proposition. Unfortunately for the IRS, while both are interesting cases, they are inapposite, at best, to the IRS's position. *Luster*, although decided over a decade after the enactments of the Bankruptcy Code and the Bankruptcy Tax Act of 1980, was decided under the Bankruptcy Act. The issue before the Seventh Circuit, in a consolidated appeal, was whether net operating loss carryforwards

("NOLs") were property of a debtor's estate under the Bankruptcy Act. Because the debtors' estates realized significant gains on the sales of property, to avoid federal taxation, the trustee sought to avail the estates of the debtors' NOLs. While the Bankruptcy Code, 11 U.S.C.A. § 346(i), and the Bankruptcy Tax Act of 1980, 26 U.S.C.A. § 1398(g), address the post petition status of tax attributes, the Bankruptcy Act and the pre–1980 IRC did not. Thus, the focus of the

exemption and a standard deduction is not affected. Personal exemptions under section 151 of the IRC and standard deductions under section 63(c) of the IRC are not tax attributes in the strict sense; they are not personal to the debtor and do not flow from the debtor to the estate. *See generally In re Luster,* 981 F.2d 277, 279 (7th Cir.1992) (in a Bankruptcy Act case, the court noted that the trustee and the debtor were competitors for tax attributes existing at the petition date). Section 1398(g) was intended to clarify "how tax attributes are to be allocated between the estate and the debtor." H.R.Rep. 833, 96th Cong., 2d Sess. 19 (1980). There is no division of personal exemptions and standard deductions between the debtor and the estate. *See* 26 U.S.C.A. §§ 1398(c)(3) & 6012(a)(1). Indeed, section 1398(c)(1) of the IRC states that the estate is to be treated as an *individual* (as opposed to a partnership, a corporation, a trust), not as the individual *debtor. Compare* 26 U.S.C.A. §§ 1398(e) and 1398(g) *with* 1398(c). Moreover, that a bankruptcy estate need not file a federal income tax return unless its gross income at least equals the sum of the exemption amount and the standard deduction amount, 26 U.S.C.A. § 6012(a)(9), also supports the estate's entitlement to these deductions from gross income. Accordingly, the court concludes each estate in a jointly filed case, unless the court orders substantive consolidation, is entitled to a personal exemption and a standard deduction, as an individual

deemed to be married filing separately, in calculating their respective taxable income.

### *Conclusion*

For the foregoing reasons the court concludes that the trustee correctly deducted for each estate a standard deduction and a personal exemption to determine the adjusted income and the taxable income, respectively, and the tax liabilities of these estates.

So **ORDERED.**

---

Seventh Circuit's inquiry was the transferability of an individual's NOLs. *In re Luster,* 981 F.2d at 279. Finding the attribute to be nonalienable outside of bankruptcy, the court discerned no bankruptcy policy that would support a contrary determination.

*Mehr* concerned the special onetime exclusion, available to persons over fifty five years of age, of up to $125,000 of the gain on the sale or exchange of the taxpayer's residence of at least five years. 26 U.S.C.A. § 121. The trustee sold the debtors primary asset, their residence, and the estate realized a gain in excess of $125,000. Seeking to avoid the estate's recognition of the gain, in reliance on section 121 of the IRC the trustee excluded $125,000 of the gain on the estate's tax return. The IRS disallowed the section 121 exclusion, and the bankruptcy court agreed. The court noted that exclusions from income are strictly construed; therefore, the taxpayer must point to a specific provision of the IRC that allows the exclusion. *In re Mehr,* 153

B.R. at 433. Looking to section 121 of the IRC, assuming the estate was a taxpayer within the meaning of section 121, the court concluded that the estate could not avail itself of the exclusion because it was not fifty five years of age and had not resided in the home for at least five years. *Id.* Next, the court looked to section 1398(g) of the IRC, which the court found of no assistance to the estate. Section 1398(g), the court held, provides an exclusive list of tax attributes to which the estate succeeds; section 121 was not included. While *Mehr* presents interesting issues, for the reasons stated herein, it does not compel the result urged by the IRS. *Rueter v. Robertson (In re Rueter),* 158 B.R. 163 (N.D.Cal. 1993), not cited by the IRS, teaches a similar lesson. There, the court held that passive activity loss carryovers were not passed on to the estate upon the debtor's bankruptcy filing—section 1398(g) provides an exclusive list of tax attributes which pass to the estate.